IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| **CHARLES FRANKLIN LYONS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 5:07-00166** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings. (Doc. Nos 11 and 13.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Doc. Nos. 6 and 7.)

The Plaintiff, Charles Franklin Lyons (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on October 23, 2003 (protective filing date), alleging disability as of September 6, 2001, due to back, neck, and head pain; a back injury; bulging discs; left side numbness; numerous injuries and nerves; residuals from a stroke; severe hearing loss from a head injury; stress; depression; and anxiety.[1] (Tr. at 397, 404, 426-28, 454, 761, 762-65.) The claim was

---

[1] Claimant previously filed applications for DIB and SSI on September 22, 2000, alleging disability as of September 5, 2000, due to a neck injury with numbness, weakness, and pain. (Tr. at 20, 47, 54, 69-73, 90, 380, 381-83.) The applications were denied by the state agency and then by ALJ Valerie A. Bawolek on October 22, 2001. (Tr. at 20, 47-49, 54-56, 57, 386-88, 392-94.) Claimant did not seek further review of his claims. (Tr. at 780.)

denied initially and upon reconsideration. (Tr. at 397-99, 404-06, 767-69, 773-75.) On May 26, 2004, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 407.) The hearing was held on October 14, 2005, before the Honorable Steven A. DeMonbreum. (Tr. at 778-819.) By decision dated January 23, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 20-31.) The ALJ's decision became the final decision of the Commissioner on January 12, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 12-15.) On March 15, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Doc. No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the

claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent

>to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
>(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
>(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 23.) Under the second inquiry, the ALJ found that Claimant suffered from traumatic and degenerative joint disease, mild hearing loss with dizziness, episodic headaches, depression, borderline intellectual capacity, and anxiety disorder. (Tr. at 23.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 24.) The ALJ then found that Claimant had a residual functional capacity for work at the sedentary and light

---

continued need for such an arrangement.

levels of exertion, as follows:

> [C]laimant retains the residual functional capacity to perform a range of light and sedentary exertional work activity, subject to postural, environmental, and mental limitations. Specifically, the claimant can lift or carry up to 20 pounds occasionally, and 10 pounds frequently; can stand, walk, and/or sit about 6 hours each in an 8 hour day. The postural limitations include occasional climbing stairs and ramps, balancing, stooping, crouching, crawling, and/or kneeling. He should never do overhead reaching or climbing ropes, scaffolds, or ladders. The environmental limitations include the need to avoid concentrated exposure to humidity and temperature extremes, chemicals, dust, fumes, vibrations, and hazards, such as dangerous moving machinery and unprotected heights. The mental limitations include the need to understand, remember, and carry out only short and simple instructions. Thus, the claimant is able to do sustained light and sedentary unskilled work activities in an ordinary work setting on a regular and continuing basis.

(Tr. at 26-27.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 28.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as an order caller, a sales attendant, and a cafeteria attendant, at the light level of exertion, and as an order clerk, a call out operator, and a charge account clerk, at the sedentary level of exertion. (Tr. at 29.) On this basis, benefits were denied. (Tr. at 29-31.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving

conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on June 24, 1958, and was 47 years old at the time of the administrative hearing. (Tr. at 22, 28, 426, 783.) Claimant had a high school education. (Tr. at 22, 460.) In the past, he worked as a groundskeeper, maintenance man, and carpenter's helper. (Tr. at 22, 455, 463-69, 786-89, 807-09.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing Claimant's pain and credibility. (Doc. No. 12 at 5-8.) Specifically, Claimant asserts that the ALJ improperly disregarded his testimony without citing specific medical evidence and without explaining sufficiently his reasons for discrediting Claimant's testimony. (Id. at 5.) He asserts that the ALJ made conclusory statements and improperly relied on his perception of Claimant's reported activities of daily living in finding that Claimant was partially

credible. (Id. at 5-7.)³ The Commissioner asserts that these arguments are without merit and that substantial evidence supports the ALJ's decision. (Doc. No. 13 at 12-15.)

A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2006); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence

---

³ In the "Statement of Facts" section of his brief, Claimant states that the ALJ's second hypothetical question posed to the VE was "vague and unclear" and that the ALJ did not quantify or explain the additional limitations. (Doc. No. 12 at 4-5.) To the extent that Claimant challenges the ALJ's hypothetical questions posited to the VE, the Court finds his claim without merit. To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. *Walker v. Bowen*, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." *Id.* at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. *See Benenate v. Schweiker*, 719 F.2d 291, 292 (8th Cir. 1983). In his hypothetical questions to the VE, the ALJ included all of Claimant's impairments that were supported by the record. (Tr. at 809-16.) Accordingly, the Court finds that any claim regarding the hypothetical questions is without merit, that the ALJ's reliance on the VE's testimony was proper, and that the ALJ's decision is supported by substantial evidence.

of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2004). Additionally, the Regulations provide that:

[w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:

> (I) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2004).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the

9

impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or]

10

redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms and credibility. (Tr. at 24-26.) With regard to the threshold test, which is outlined above, the ALJ found that "the medical evidence is sufficient to establish that the claimant possesses an impairment that can reasonably be expected to produce some degree of pain and discomfort." (Tr. at 26.) The ALJ therefore proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 26-28.) The ALJ noted the requisite factors, and then analyzed them in the opinion, concluding that Claimant was partially credible regarding his alleged pain and limitations, and that the "evidence fails to establish that the claimant's pain is so severe and intractable as to prevent the performance of all work activity." (Tr. at 26.)

The undersigned finds that the ALJ properly considered the factors under 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4), in evaluating Claimant's pain and credibility. Regarding activities of daily living, the ALJ acknowledged Claimant's testimony that he spent his day watching television, reading the Bible, and listening to music on the radio, despite complaints of constant pain which affected his ability to concentrate. (Tr. at 23, 26, 801.) He acknowledged Claimant's allegations that he performed few, if any chores, but noted that he lived alone and did not report "any particular help in maintaining the residence." (Tr. at 26, 512-14.) In a form questionnaire dated

11

July 27, 2004, Claimant reported that he lived alone. (Tr. at 26, 512.) He indicated that he tried to cook but mainly ate sandwiches and frozen dinners. (Tr. at 26, 513.) He further indicated that he washed dishes, shopped for groceries, and tried to walk around the house, yet he reported that he could not "stand to do anything." (Tr. at 26, 514.) Claimant also testified that he scrubbed the toilet once in a while and took short walks. (Tr. at 798, 803.)

In a form Activities of Daily Living, dated April 13, 2004, Claimant reported at that time that he lived with his mother. (Tr. at 485.) He reported that he took care of his personal needs and grooming, but checked boxes indicating that he required help washing, bathing, and dressing. (Tr. at 486.) Claimant explained that "I will not let anybody help me. I live with my mother who cannot help me." (Id.) Apparently, he was able to manage his own personal care and grooming without assistance. He further reported that he prepared simple meals, did laundry, washed dishes, shopped for medication, read the Bible for thirty minutes at a time, and watched television for one hour at a time. (Tr. at 486-87.) Claimant indicated that he drove an automobile only when necessary, but that he visited his sister every couple of weeks for thirty minutes, as he was headed to the post office. (Tr. at 486, 88.) He further reported that due to pain, he experienced constant problems concentrating. (Tr. at 489.)

Regarding treatment, the ALJ found that Claimant's pain and limitations were "out of proportion to his actual impairments and the treatment he has received." (Tr. at 26.) The ALJ noted Claimant's testimony regarding the limitations from his pain and conditions. (Tr. at 22, 790-805.) Specifically, he noted Claimant's testimony that he experienced dizziness associated with hearing loss, which was worse with any sudden movements; that he could not turn his head due to the cervical fusion; and that due to torn cartilage in his right knee he had used a cane for the past five

12

years to assist in balancing and to avoid falling. (Tr. at 22, 790-92, 796, 798) He found however, that Claimant's conditions were not being treated with "physical therapy, biofeedback, a TENS unit, a dorsal stimulator, a morphine pump, acupuncture, massage therapy, braces or splints, special creams or ointments, herbal remedies, chiropractic adjustments, hot/cold packs, etc. for pain relief." (Tr. at 26.) Though the record indicates that Claimant underwent physical therapy in the past and had used heat for treatment, the record does not indicate that he utilized some of these other forms of treatment. Despite Claimant's reports that he was required to use a cane for stability due to right knee pain and despite having had a medical card, the medical evidence reveals that Claimant refused the recommended surgery to repair a torn meniscus of his right knee, and did not wear a knee brace as recommended. (Tr. at 693-96, 758, 793.) Furthermore, despite his reports of frequent falls (Tr. at 730, 796.), Claimant conceded at the hearing that he had not fallen at any time since slipping on ice in January, 2005. (Tr. at 795-96.) He further testified that he had not fallen for any other reason. (Tr. at 796.) Claimant reported that he used the cane even prior to his right knee problems but at least one state agency physician opined that its use may not have been necessary. (Tr. at 599.)

Moreover, as the Commissioner notes, the medical evidence indicates that Claimant exaggerated his pain and engaged in symptom magnification. (Tr. at 531, 539.) Specifically, on August 21, 2001, Robert J. Blok, Sr., D.O., a pain treatment specialist at The Know Pain Clinic, noted that Claimant had some pain magnification. (Tr. at 538.) Likewise, on October 18, 2001, Dr. Bruce Cannon, D.O., another pain treatment specialist at The Know Pain Clinic, noted that Claimant "does appear to have some pain magnification tendencies." (Tr. at 533.) Prior thereto on February 4, 1999, Victoria Neave, M.D., Claimant's treating neurologist, observed that Claimant exhibited "incredibly exaggerated pain response to the lightest touch" and that "[e]ven the slightest touch with

no pressure at all made him wince and move away from me and complain about severe pain." (Tr. at 254.) The reports of pain magnification support the ALJ's finding that Claimant was partially credible.

The ALJ accommodated Claimant's limitations to the extent that they were credible in assessing his RFC. Regarding his physical limitations, the ALJ found that Claimant's joint and back pain precluded heavy lifting and continuous postural changes, and therefore, he limited him to performing sedentary or light exertional level work. (Tr. at 27.) The ALJ restricted Claimant from climbing ladders, ropes, or scaffolds and working around hazards, which accommodated his complaints of dizziness. (Id.) He further precluded him from working in noisy environments due to a mild hearing loss, and limited reaching due to a possible left shoulder rotator cuff tear. (Id.) As the Commissioner points out, none of the physical RFC assessments of record were more restrictive than the limitations imposed by the ALJ. (Tr. at 331-39, 340-48, 650-57, 666-73.) Regarding Claimant's limitations in maintaining attention and concentration, as well as his borderline intellectual functioning, the ALJ limited Claimant to performing simple, easy to learn, unskilled jobs. (Id.) Though Claimant alleged a complete inability to concentrate, his activities of watching television and reading the Bible suggested otherwise. (Id.) Furthermore, Claimant was assessed GAF scores of 60 and 65, which were indicative of only mild to moderate symptoms and limitations.[4] Based on

---

[4] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has some moderate symptoms or "moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994). A GAF of 61-70 indicates that the person has some mild symptoms or "some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

the foregoing, the Court finds that the ALJ's pain and credibility assessment is supported by substantial evidence.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion to Remand (Doc. No. 11.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. No. 13.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: April 9, 2008.

R. Clarke VanDervort
United States Magistrate Judge